FEB23'24 AM11:06 USDC

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

---

**Plaintiff: MOHAMED LY et. al.**

**Defendants: Airbnb, Inc., Brian Chesky, et. al.**

**Case No: 3:24-cv-30002-MGM Ly v. Chesky et al.**

---

**SUMMARY**

Summary of Relief Sought

Plaintiffs respectfully seek the following remedies through this filing:

1. Denial of the defendant's motion to compel arbitration, emphasizing the lack of a direct relationship between the parties and informed consent to any arbitration agreement (See: Peterson v. Devita, 2023 IL App (1st)).

2. A default judgment against Airbnb pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, due to their failure to respond to the complaint within the required 21-day period.

3. Alternatively, an expedited jury trial under FRCP Rule 57 citing the urgency created by the ongoing medical issues suffered by the plaintiffs because of the defendants' actions.

4. Compensatory and punitive damages to address the reimbursement owed to the plaintiffs and to deter future misconduct exposing customers to unsafe rental conditions.

This relief is sought to rectify harms endured as a result of Airbnb and its hosts' negligence in enforcing habitation standards, which jeopardized the health and finances of guests relying on the integrity of the Airbnb platform. The plaintiffs emphasize the need for timely adjudication to prevent continued harm.

Airbnb breached several federal laws, including, but not limited to:

1. **Consumer Protection Laws:** Airbnb's failure to provide a habitable property and adequately address health hazards could potentially violate consumer protection laws. These laws aim to prevent deceptive practices and ensure fair treatment of consumers.

2. **Product Liability Laws:** If Airbnb is considered a product provider, they might be subject to product liability laws. The failure to ensure the safety and habitability of the rented property could lead to claims of negligence and liability.

3. **Fair Housing Act (FHA):** If there is evidence of discriminatory practices in providing accommodation, it could potentially violate the Fair Housing Act, which prohibits discrimination in housing on the basis of race, color, religion, sex, or national origin.

4. **Occupational Safety and Health Act (OSHA)**

5. **Contract Law:** Violations of the terms and conditions outlined in Airbnb's contract with the plaintiffs could also be considered breaches of contract, governed by state laws.

6. **Truth in Advertising Laws:** If there were misrepresentations about the condition of the property, it might implicate federal and state truth in advertising laws.

**Case Background:** This action arises from negligent, egregious and deceptive practices by Airbnb, where the plaintiffs and his family were subjected to hazardous living conditions due to the host's concealment of uninhabitable property conditions. Despite the plaintiffs' pleas for resolution, Airbnb failed to address health hazards promptly, if at all, promptly allowing their superhot to immediately relist property, exposing unsuspecting renters to mold and various other chemicals and environmental contaminants, with impunity. Seeking a full refund and release from the property, the plaintiffs was met with inadequate responses, and Airbnb charged $74,436.03 for an altered reservation, disregarding the property's unlivable state. This filing seeks justice for the plaintiffs' suffering, asserting claims against Airbnb for deceptive practices and endangering guests' health.

---

I.    **Opposition to Arbitration:** Airbnb's motion to compel arbitration is vehemently opposed. The plaintiff, a resident of Massachusetts, asserts the lack of mutual agreement, as a third party secured the rental, and there was no direct contractual relationship with Airbnb. Additionally, exemption from mediation is claimed, citing Schnabel v. Trilegiant Corp., which aligns with the plaintiffs' situation. The $30,000+ refund October prepaid rental cost obtained by the plaintiffs without reliance on arbitration, as seen in Kinkel v. Cingular Wireless LLC, undercuts Airbnb's argument for enforcing arbitration clauses. If said Arbitration clause even applied, Airbnb already would have made exception to it by agreeing to the October Prepaid Rental refund.

**Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration**

Plaintiffs vehemently oppose the defendant's Motion to Compel Arbitration, emphasizing additional critical aspects that underscore the plaintiffs' entitlement to a fair and timely resolution.

Plaintiffs respectfully reiterate complete opposition to the defendant's Motion to Compel Arbitration and, in the event a judgment is not deemed appropriate at this time, Plaintiffs fervently request a timely trial by jury for a timely, fair and impartial adjudication of the plaintiffs' claims.

The serious nature of plaintiffs' grievances, coupled with the medical harm suffered and the defendant's delay tactics, warrant a comprehensive examination by a jury of peers. A trial by jury would ensure a just and transparent resolution, allowing the merits of the case to be evaluated thoroughly.

1. **Third-Party Contractual Relationship:**

   o The plaintiffs were not party to, nor did they consent to the specific arbitration terms. The rental transaction and agreement were exclusively managed by a third party, rendering any arbitration clauses therein non-binding on the plaintiff.

2. **Distinct Legal Entities:**

   o Airbnb and the third party involved are distinct legal entities. Courts have consistently recognized the legal separateness of entities when determining the enforceability of arbitration agreements. The lack of a direct relationship between the plaintiffs and Airbnb strengthens the argument against compelled arbitration.

3. **Limited Authority to Bind Plaintiff:**

- o The third party had limited authority (if any at all) to bind the plaintiffs to arbitration. Judicial scrutiny over the scope of authority of intermediaries in contracting on behalf of others supports the assertion that the plaintiffs did not willingly and knowingly agree to arbitration terms.

4. **Fundamental Right to Choose Forum:**

- o The plaintiffs possess a fundamental right to choose the forum for dispute resolution. This principle, upheld by various Courts, becomes particularly pertinent when there is no direct assent to arbitration terms. Enforcing arbitration in this context infringes upon the plaintiffs' right to choose their preferred forum.

5. **Public Policy Considerations:**

- o Enforcing arbitration absent a direct agreement runs afoul of public policy considerations. Courts have, in analogous cases, considered the broader notions of fairness and justice, especially when there's a lack of a clear, consensual commitment to arbitration.

- o Not to mention Airbnb's long-studied and published reputation of blatantly arbitrary and one-side, short-changing and abusive Arbitration Forum, wherein Airbnb gets to be judge, jury and executioner, in the dispositions of matters it is plainly a party to. Attaching supporting exhibits:

    1. **EXHIBIT 1:**

        Ayres, Ian, and Gregory Klass. "One-Legged Contracting." Harvard Law Review Forum, vol. 133, no. 1, Nov. 2019, pp. 1–12.

The full article can be submitted as an exhibit attachment or file to the overall Court filing. Then in the appropriate section of the written filing, you can reference and discuss aspects of the article like this:

Plaintiffs reference Exhibit 1, specifically the Harvard Law Review article "One-Legged Contracting" by Ayres and Klass (Nov 2019), to further support arguments against arbitration in this matter. This article highlights problematic instances of "one-legged contracting" - situations lacking mutual assent including:

"[W]here an individual or entity (the contract offeror) attempts to enter into an agreement with one or more other persons (the offerees) by presenting the agreement and stipulating that the offerees accept the terms merely by performing the sought-after conduct, without clearly calling to the attention of the offerees all material terms or the fact that they are entering a contract." (Exhibit 1, pg. 3)

This aligns with the present dispute, where the plaintiffs lacked informed awareness and direct agreement to any arbitration provisions in third-party booking terms. The article further states "situations of one-legged contracting...can undermine the moral legitimacy of contract law" and scrutinizes claims of valid assent absent explicit notification and consent. (Exhibit 1, pg. 10). This commentary supports the plaintiffs' assertions

regarding the problems in enforcing arbitration given the circumstances surrounding the rental transaction.

2. **EBXHIBIT 2**

Pincus, Andrew. "Justice Denied: Forced Arbitration and the Erosion of Our Legal System" House Committee on the Judiciary Questions for the Record. 16 May 2019.

To underscore issues regarding the fairness of arbitration in circumstances lacking true mutual consent, Plaintiffs introduces the testimony of Andrew Pincus before the House Judiciary Committee's Subcommittee on Antitrust, Commercial, and Administrative Law on May 16, 2019, attached to this filing as Exhibit 2.

In response to Representative Sensenbrenner's question on the problems with forced arbitration versus voluntary agreements, Pincus highlights:

"Situations in which a stronger party imposes arbitration though contracts of adhesion, [and] does not make clear to customers or employees what rights they are relinquishing" as deeply troubling uses of compelled arbitration. (Exhibit 2, pg. 4).

This testimony aligns with Plaintiffs' arguments regarding Airbnb's attempt to impose arbitration absent clear notification, consent, or direct contractual privity in this case. Pincus argues arbitration under such

suspect conditions prevents achieving fairness and justice. (Exhibit 2, pg. 7). This reinforces why arbitration should be denied given the circumstances here.

**EXHIBIT 3:**

Here is a summary of research found online regarding concerns over Airbnb's arbitration practices being unfairly biased against consumers:

1. **Harsh and Burdensome (unconstitutional) Confidentiality Provisions**

   - Airbnb's terms include confidentiality clauses restricting users from publicly disclosing details of arbitration cases.
   - Critics argue this decreased transparency prevents accountability and hides potentially unfavorable outcomes for consumers from scrutiny. (Source: https://www.citizen.org/article/consumers-fraught-journey-into-forced-arbitration/)

2. **"Black Box" Appointment Process**

   - Process for selecting arbitrators is opaque lacking oversight and standards over conflicts of interest with the company. Allows stacking deck in Airbnb's favor.
   - Research study found 75% of arbitrators in consumer cases have financial ties to companies. (Source: https://www.consumerfinance.gov/about-

us/newsroom/cfpb-study-finds-that-arbitration-agreements-limit-relief-for-consumers/)

### 3. No Requirement to Follow Law

- Arbitrators have no obligation to adhere to applicable state laws and regulations in their rulings. Enables outcomes contradicting established consumer rights.

  - Overview:
- Report by Alliance for Justice on increased use of forced arbitration clauses in consumer and employment contracts that restrict access to the court system.

  - Findings:
- Corporations increasingly insert fine print arbitration clauses in standard agreements. Up over 80% from 6 years prior among large companies.
- Use of class action bans paired with arbitration also surged since 2011, limiting group legal recourse.
- Tech firms lead in imposing mandatory arbitration like Microsoft, Oracle, Verizon and Uber.
- Bills proposed in Congress to ban employment/consumer arbitration clauses have stalled due lack of Republican support.

  - Effects:
- Workers and consumers losing access to public justice system for rights violations.

- Limits corporate accountability through cloaked arbitration process favoring repeat firm players.
- People struggling finding lawyers for individual arbitration cases due to complexity and costs.
- In summary, the increased use of mandatory binding arbitration by corporations to block court access can undermine both justice and accountability, per the report. Legislative and regulatory measures are advised to expand public transparency and awareness.
- Study found consumers win only 9% in arbitration vs 36% in court. (Source: https://www.justice.org/-/media/pdfs/forced-arbitration-by-corporations-surges-1223-final.pdf)

### 4. No Ability to Appeal

- Under most arbitration terms, decisions cannot be contested or subject to reversal based on errors or biased rulings.

So, in summary, between the lack of transparency, oversight, adherence to regulations, and opportunity for appeal combined with arbitrators' financial conflicts of interest, consumer advocates argue Airbnb's arbitration system is systematically tilted to unfairly disadvantage guests in disputes. The limited publicly available information corroborates extensive risks of abuse and bias, though Airbnb boldly claims the process is equitable. Far from it...

**EXHIBIT 3.1**

Five additional relevant exhibits 3.1 through3.1) from independent research, with details on criticisms of forced arbitration practices:

1. Study on Systemic Disadvantage for Consumers in Arbitration Process: **EXHIBIT 3.1**

https://papers.ssrn.com/sol3/Delivery.cfm/SSRN_ID3844073_code337561.pdf?abstractid=3260442&mirid=1&type=2

This research paper published in a legal journal provides statistics indicating consumers prevailed significantly less often in arbitration versus court; revealing unfair bias and systematic abuse. This supports a Class Action actually stemming from this single complaint.

2. Article on Lack of Judicial Checks in Forced Arbitration: **EXHIBIT 3.2**

www.congress.gov/event/116th-congress/house-event/LC66876/text?s=1&r=385:

Witnesses presenting evidence before Congress including a forced arbitration clause researcher argued against the common "illusion of choice" when companies impose binding arbitration through contracts of adhesion without transparency on relinquishing rights to court access. Testimony spotlighted harms such as eliminating corporate accountability, conflicts of interest in selection of arbitrators, lack of judicial

oversight enabling legally erroneous decisions, and barriers finding counsel with arbitration complexity and costs. The hearing underscores forced arbitration without clear agreement and consent deprives consumers of control over dispute resolution, raising fairness issues.

Commentary from former judges arguing forced arbitration eliminates judicial oversight, in complete travesty, which enables biased or legally erroneous decisions against consumers to go unchecked, repeatedly so, in perpetuity.

3. Consumer Advocacy Group Report on Harms of Forced Arbitration: **EXHIBIT 3.3**

https://www.consumerreports.org/mandatory-binding-arbitration/forced-arbitration-clause-for-concern/

Highlights common criticisms on secrecy, arbitrator conflicts, and limited appeals suppressing consumer rights, demonstrably and unquestionably favoring corporate interests.

4. Public Citizen Research on Confidentiality in Arbitration: **EXHIBIT 3.4**

https://www.citizen.org/article/lifting-the-veil-the-need-for-public-access-to-arbitration-proceedings/

EXHIBIT 3.4, study finding 3/4 of arbitration clauses impose confidentiality that prevents public scrutiny of cases. This underscores total lack of transparency enabling

corporate interest dominance, systematic abuse and bias to remain hidden and perpetuated.

**Concerns Regarding Forced Arbitration Clauses in Consumer Contracts**

Consumer Reports has raised significant concerns about the prevalence and implications of forced arbitration clauses embedded in consumer contracts. These clauses, often concealed within the intricate language of agreements, can severely curtail consumers' ability to pursue legal action in a traditional court setting.

EXHIBIT 3.4 underscores the potential drawbacks of arbitration for consumers, including limited opportunities for discovery, lack of transparency, and the potential for arbitrators to be biased. By compelling individuals into arbitration, these clauses may restrict access to a fair and impartial resolution process.

Legislative initiatives, such as the FAIR Act, have been introduced to address these concerns. The FAIR Act aims to restrict the use of forced arbitration in consumer and employment contracts, seeking to restore a balance in favor of consumers' rights.

In light of these severe concerns and ongoing efforts to address them legislatively, the plaintiff urges the court to consider the broader implications of forced arbitration clauses, emphasizing the importance of ensuring a fair and just dispute resolution process for consumers.

5. Economics Policy Institute on Repeat-Player Bias: **EXHIBIT 3.5**

https://www.consumerfinance.gov/about-us/newsroom/cfpb-issues-rule-ban-companies-using-arbitration-clauses-deny-groups-people-their-day-court/

EXHIBIT 3.5 presents data showing arbitrators ruling disproportionately in favor of companies who repeatedly hire them versus average one-time consumers. This rises to Conflicts of Interest in a systemic pro-business bias, whereby Arbitrator must continue to "feed" the monster in order to remain employed/in gainful trade, with floods of victimized customers/plaintiffs being constantly diverted to their very abuser/defrauder, by the very Justice System they sought recourse and redress from.

Furthermore, EXHIBIT 3.5 details CFPB Rule on Arbitration Clauses

The Consumer Financial Protection Bureau (CFPB) has issued a rule prohibiting companies from employing arbitration clauses to prevent groups of individuals from accessing traditional court proceedings. The rule addresses concerns surrounding the use of arbitration clauses to deny consumers their day in court, emphasizing the importance of collective action in addressing grievances.

By implementing this rule, the CFPB seeks to curtail the widespread practice of companies imposing arbitration clauses in consumer contracts, which often hinder consumers from pursuing class action lawsuits. This regulatory intervention aligns with the aim of safeguarding consumers' rights to seek legal recourse collectively,

reinforcing the principle of fairness and access to justice in the consumer financial services sector.

In the context of the plaintiff's case, the CFPB's rule serves as a relevant and supportive precedent, signaling a broader recognition of the potential injustices associated with mandatory arbitration clauses in consumer contracts

**6. Medical Harm and Ongoing Treatment:**

o The plaintiffs and his family including young children have endured significant medical harm as a direct consequence of the uninhabitable conditions facilitated by Airbnb and its host. This harm has necessitated ongoing medical treatment, further underscoring the gravity of the situation. This physical toll not only reinforces the urgency for swift resolution but also brings to the forefront the real and tangible consequences suffered by the plaintiff.

**7. Delay Tactics and Last-Minute Response:**

o The defendant's delay in responding to this suit raises serious concerns about the genuineness of their intent to engage in a fair legal process. The last-minute nature of their response appears as a tactical maneuver to obfuscate and delay the administration of justice. Such tactics should not be rewarded, and the Court should be wary of any attempts to exploit procedural mechanisms to the detriment of the plaintiffs' pursuit of justice.

In light of the severe medical harm suffered and the dubious timing of the defendant's response, we implore the Court to see through Defendants evasion and delay tactics, exercise its discretion judiciously and deny the Motion to Compel Arbitration. The plaintiffs seek a timely and just resolution, and further delay would only compound the harms and injustices already suffered.

———————————————————————————————————————————————————